# No. 24-2601

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

KARIM ANNABI,
*Pro Se Plaintiff-Appellant*,

v.

NEW YORK UNIVERSITY,
*Defendant-Appellee*

_____

On Appeal from the United States District Court
for the Southern District of New York

_____

**BRIEF FOR PLAINTIFF-APPELLANT**


Karim Annabi, Pro Se

35 Priory Crescent

Southend-On-Sea

SS2 6JY, UK

+447508918352

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................. i

TABLE OF AUTHORITIES ......................................................... ii

STATUTES & RULES ............................................................. iii

CERTIFICATE OF COMPLIANCE ................................................. iii

PRILIMINARY STATEMENT ....................................................... 1

STATEMENT OF JURISDICTION ................................................... 2

STATEMENT OF THE ISSUES .................................................... 2

STATEMENT OF THE FACTS AND THE CASE ..................................... 2

STANDARDS OF REVIEW ........................................................ 6

SUMMARY OF THE ARGUMENT .................................................. 7

ARGUMENT .................................................................... 9

I. The District Court Judge Again Failed to Recuse Himself……………...…9

II. The District Court Did Not Apply the Necessary Legal Standards…..........16

III. The District Court Wrongly Decided that Plaintiff Did Not Properly Plead Valid Discrimination Claims ....................................................17

IV. The District Court Wrongly Decided that Plaintiff's Alumni Benefits are a "Gratuitous" Promise and do not Mount to a Breach of Contract ...............24

V. The District Court Wrongly Decided that NYU Does Not Have to Abide by the Stated Terms of the Challenge Contest .................................26

VI. The District Court Wrongly Dismissed the GBL §349 and §350 Claims….28

VII. The District Court Wrongly Dismissed the Complaint with Prejudice…….29

CONCLUSION ................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)...............6

*Mills v. Polar Molecular Corp*., 12 F.3d 1170, 1174 (2d Cir. 1993) ....................10

*Smith v. Hogan*, 794 F.3d 249, 253 (2d Cir. 2015) ................................10

*Terio v. Johann*, 257 F. App'x 374 (2d Cir. 2007) ..................................10

*Litovich v Bank of America Corp*, (2nd Cir. No. 21-2905....................................13

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987) ....................................14

*DeVore v. Neighborhood Hous. Servs. of Jamaica Inc.,* No. 15 Civ. 6218 .........13

*Littlejohn v. City of New York*, 795 F.3d 297 (2015) at 311 ................................21

*Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72 ......................................21

*Feliz v. M.T.A*., 2017 WL 5593517, (S.D.N.Y. Nov. 17, 2017)...................21 & 25

*Karunakaran v. Borough of Manhattan Cmty. Coll.,* 2021 WL 535490...............24

*Brown v. Daikin Am. Inc.,* 756 F.3d 219, 230 (2d Cir. 2014) ..............................24

*Johnson v. N.Y.U*., 800 F. App'x 18, 21 (2d Cir. 2020)......................................24

*Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 102 (2d Cir. 2001).......25

*Walsh v. New York City Hous. Auth.,* 828 F.3d 70, 76 (2d Cir. 2016).................25

*Anderson v. Wachovia Mortgage Corp.,* 621 F.3d 261, 275 (3d Cir. 2010).........27

*CBOCS West, Inc. v. Humphries*, 553 U.S. 442....................................27

*Papelino v. Albany College of Pharmacy,* 633 F.3d 81, 93 (2d Cir. 2011...........28

*Bosch v. NorthShore Univ. Health Sys.*, 2019 IL App (1st) 190070.....................28

*Startech, Inc. v. VSA Arts.,* 126 F. Supp. 2d at 236.................................29

## RULES

Fed. Rule of Appellate Procedure 4(a)(1)(A) ........................................................6

Fed. Rule of Civ. Procedure 15(a)(1)(B) ...............................................................9

Fed. Rule of Civ. Procedure 12(b)(6) .....................................................................9

Fed. Rule of Civ. Procedure 9(b) & 8(a) ..............................................................32

## STATUTES

28 U.S.C. §1291, §1331, §1332 and §1343 ............................................................6

28 U.S.C. §455 ......................................................................................................14

Title VI of the Civil Rights Act ("Title VI") .......................................................17

Title IX of the Education Amendments Act of 1972 ("Title IX") ........................20

42 U.S.C. § 1981 ...................................................................................................22

New York City Human Rights Law ("NYCHRL") §§ 8-107(4) and (17) ...........22

New York General Business Law ("GBL") § 349 & 350 .....................................28

## CERTIFICATE OF COMPLIANCE

I, Karim Annabi, certify that this brief contains 14,000 words or less.

## PRILIMINARY STATEMENT

Plaintiff-Appellant Karim Annabi ("Plaintiff"), a two-time alumnus of Defendant-Appellee New York University ("NYU"), brings this action alleging discrimination, breach of contract, false advertising and deceptive practices arising from NYU alumni programs and skilled contests. NYU has also retaliated against Plaintiff by designating him a *Persona Non Grata* and other acts. Requests to NYU to provide any explanation have gone unanswered. Against the backdrop of racial, religious and political violence, including terrorism home and abroad, and a financial crisis that has revealed the extent of economic inequality in society, NYU's actions are extremely bizarre given the nature of Plaintiff's work, "The Sir David Amess Peace Initiative," promoting peace and unity, and "iactivatelove," a social network startup and fashion label promoting economic empowerment.[1]

This appeal will demonstrate that Plaintiff's claims are sufficiently pled and that Judge Liman has acted as an extension of NYU's defense team due to substantial conflicts of interests that should have led to his recusal. The last two

---

[1] The Sir David Amess Peace Initiative is the first known interfaith sainthood nomination campaign, honoring Plaintiff's Catholic UK Member of Parliament, who was stabbed 21 times on the job by a Muslim terrorist, with a petition to also award Sir David with a US Presidential Medal of Freedom posthumously (sirdavidamess.com). / iactivatelove, or Activate, operates on, and promotes, a 99% plus profit-sharing business model that distributes profits with its members globally, to donate, or pool and invest in their grassroots projects on a live world map, and the remainder 1% freely to 99 benevolent organizations, such as the U.S. First Responders Children's Foundation, an official account holder and ambassador organization (iactivate.love).

years since this action started have been a judicial charade to achieve pre-determined objectives, a conclusion supported by an any objective analysis.

## STATEMENT OF JURISDICTION

Appellate jurisdiction is proper under Federal Rule of Appellate Procedure 4(a)(1)(A). This Court has jurisdiction under 28 U.S.C. § 1291 because the District Court entered judgment dismissing the action on September 20, 2024, and Plaintiff filed a timely notice of appeal on September 29, 2024. The District Court had subject matter jurisdiction under 28 U.S.C. §1331, §1332 and §1343.

## STATEMENT OF THE ISSUES

1.  Whether the District Court erred by Judge Liman failing to recuse himself.

2.  Whether the District Court erred in not applying the required legal standards.

3.  Whether the District Court erred in deciding that Plaintiff's alumni benefits are "gratuitous" promises that were not breached in an implied contract.

4.  Whether the District Court erred in dismissing all the discrimination claims.

5.  Whether the District Court erred in dismissing the GBL §349 and §350 claims.

6.  Whether the District Court erred in dismissing the complaint with prejudice.

## STATEMENT OF THE FACTS AND THE CASE

Plaintiff is an American, British, Algerian-born, Arabic, Muslim male who paid NYU hundreds of thousands of dollars between 1999 and 2010 for two degrees sold with alumni benefits. Plaintiff has been described by an NYU Dean

2

as, "a truly valuable asset" for NYU, who "demonstrates the kind of attributes we in higher education fervently hope to impart to all our students." In 2021, NYU banned only Plaintiff from Berkley Center alumni startup advising after 5 sessions when the rules state that there is no booking limit. Around the same time, NYU advertised the Entrepreneur's Challenge ("Challenge"), its flagship startup contest/incubator program, another alumni benefit, which is funded by the Rennert family. The selection criteria included "strong ties" to NYU and "World Positive" ventures. The Challenge promised "25-35" winners selected by "third-party" Judges, amongst other terms, and had no disclaimers. The Berkley Center's policies and the Challenge allow one-person teams, of which there are hundreds.

Plaintiff paid $100 to enter the 2021 Challenge, which had mandatory gender and race identifying questions, and submitted a complete entry that NYU admitted had "merit." NYU rejected Plaintiff while not filling 5 winning spots, which it could have filled with other eligible entries that it also sold short. NYU's written feedback on Plaintiff's submission had standards that were not in line with the strict application instructions or reflect the submission. NYU ignored Plaintiff's request that it honor the 25-35 winners promise and banned only him from participating in any alumni entrepreneurship program with conditions such as, he must build a team and a more advanced prototype, requirements that are against the Center's and the Challenge's written policies and not applied to others.

3

In 2023, Plaintiff again paid $100 and applied to the Challenge, with a team and a market ready social network and app, but NYU did not evaluate the entry. There was also no response to a request to lift the bans, despite earlier instructions to reach out to NYU once the above conditions were fulfilled, proving they had been pretexts for permanent exclusion. NYU statistics in annual reports and on its website further revealed years of pervasive gender discrimination in the school's entrepreneurship contests and programs, supported by Plaintiff's own experience in the 2021 and 2023 Challenge, the 2021 Hackathon and the 2023 Gift Guide.

On May 20, 2024, NYU sent an Alumni Relations administrator with security to escort Plaintiff out of the middle of an Alumni Association Board Meeting, for which he was registered, threatening him with arrest if he sets foot on campus again, including if attending any alumni event or service. The next day Plaintiff received a *Persona Non Grata* letter from NYU by email (App. p. 27).

NYU, through Islamic Center Director, Professor and Imam Khalid Latif, his supervisors, and others, has also discriminated against Plaintiff by restricting his peaceful freedom of speech and religion relative to others since 2022. NYU has censored Plaintiff from speaking about his peace initiative, his startup and submitting prayers for deceased non-Muslim individuals, Sir David Amess and Queen Elizabeth, in the NYU Islamic Center's prayers from the community email published every Friday. Most recently, on the anniversary week of the October 7th,

4

2023 Hamas attack, NYU rejected publishing Plaintiff's prayers for the deceased in Israel, an innocuous gesture of condolence to NYU's Jewish community, to be included in the weekly statement, "Prayers have been requested for all those who passed away in Lebanon, Palestine, Yemen, and Sudan." To date, NYU continues to exclude Israel from that weekly statement while publishing other statements in parallel that pray for the people of an additional list of countries (App. p.28):

> Prayers have been requested for all those suffering from …violence…danger …and trauma, especially the people of Kashmir, Palestine, Sudan, the Congo, Rohingya, Uyghurs and all others in the ummah and beyond.

At best, "and beyond" seeks to avoid mentioning killed Jews and Israel directly, where the only explanations are, NYU's administrators are antisemitic, discriminating against Plaintiff's bridge-building speech and religious practice, or both. This type of multi-layered discrimination is still taking place at NYU despite the school recently settling a lawsuit by Jewish students and falsely marketing itself in the July 9, 2024 press release as, "committed to take groundbreaking measures to address antisemitism, including in the wake of the October 7, 2023 terrorist attack" and "zero tolerance for antisemitism and all other discrimination."

*Procedural History*

Plaintiff initiated this action on May 9, 2022 and amended the complaint (Dkt. 37 "FAC") under Fed. Rule of Civ. Procedure 15(a)(1)(B) before any Court review. Plaintiff also filed a motion for preliminary injunction and a restraining

order to freeze the 2021 Challenge (Dkt. 42), which NYU opposed (Dkt. 43) and

the Court denied (Dkt. 44).[2] NYU submitted a motion (Dkt. 46) to dismiss the

FAC, which Plaintiff opposed (Dkt. 59), but the Court granted without prejudice

(Dkt. 63). Plaintiff submitted a second amended complaint (Dkt. 70 "SAC")

maintaining only the core claims and pedantically addressing the issues

highlighted in the prior dismissal. NYU submitted a motion to dismiss (Dkt. 74)

the SAC, which Plaintiff opposed (Dkt. 80) and submitted a motion for oral

arguments (Dkt. 78). The Court was unresponsive (Dkt. 79) to Plaintiff's motion

and granted NYU's motion and closed the case with prejudice (Dkt. 83-84).

## STANDARDS OF REVIEW

On appeal, the Appellate Court reviews the granting of a motion to dismiss

pursuant to Rule 12(b)(6) *de novo*, accepting as true all factual claims in the

complaint and drawing all reasonable inferences in the Plaintiff's favor. *Smith v.*

*Hogan,* 794 F.3d 249, 253 (2d Cir. 2015) ("This Court reviews de novo a district

court's dismissal for failure to state a claim [.]"); *Terio v. Johann*, 257 F. App'x 374

(2d Cir. 2007) ("This Court reviews the dismissal of a cause of action under Rules

12(b)(6) de novo."). Dismissal of a case is appropriate when "it appears beyond a

doubt that the Plaintiff can prove no set of facts in support of his claim which would

---

2 The Challenge was operating with a corrupted selection process, had lowered the prize money
after accepting entry fees that are illegal for a skilled contest in many states, had a proud tradition
of serving alcohol to student winners without verifying their age, and other irregularities.

entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This standard is even lower for alleged civil rights violations.

## SUMMARY OF THE ARGUMENT

Judge Liman's substantial conflicts of interest resulted in biased dismissals of substantiated and properly pled claims. The SAC satisfied the deficiencies highlighted in the previous order, but the Court once more disregarded the legal standards to arrive at the same predetermined decision. The Court drew many inferences in favor of NYU, split hairs in semantics to find fault with Plaintiff's allegations, disregarded key allegations altogether and cited cases disingenuously.

In dismissing the FAC discrimination claims, the Court cited a lack of disparate treatment examples that were similarly situated. The SAC provided these in abundance, even citing several social network examples. Furthermore, at this stage, Plaintiff being a qualified NYU contestant who submitted a complete entry and an alumnus program participant should suffice as similarly situated to others, not the ventures. Even with this higher standard, the Court overlooks many alleged venture examples. The Court also overlooks that Plaintiff exclusively is not allowed to be a one-person. Similarly, the gender discrimination claim is dismissed by overlooking allegations, which include years of pertinent statistics, descriptions of advantageous programs admitting only females that on paper are open to males, clear admissions of favoritism and disparate treatment examples.

For the alumni benefits breach of contract claim, the Court finds faults with the allegations where there are none, most egregiously stating that Plaintiff did not allege payment or consideration. In the FAC, the Court even admitted that there was consideration, but blamed a timing discrepancy between the alumni promises and payments, a wrong inference in favor of NYU, as it was also alleged that the Challenge benefit is more than 20 years old. With that "deficiency" cured in the SAC, the Court resorts to calling the benefits "gratuitous promises" and selectively citing from a case to support dismissing the claim when a more detailed reading contradicts that argument. Another previously stated deficiency was that the alumni benefit promises were vague. The SAC alleged detailed descriptions from the brochures of each benefit denied Plaintiff, but these too were overlooked.

For the Challenge contract breaches, the Court agrees that there were valid contracts for 2021 and 2022 contests, yet inexplicably does not accept factually pled allegations about basic contest terms, such as the number of winners. The Court construes in favor of NYU that the breached terms are "loose language," while ignoring such important allegations as the 2023 entry was not even judged.

The GBL false advertising and deceptive claims were similarly dismissed, with arguments such as Plaintiff used some of the alumni products prior to being banned, so there was full performance, when it is alleged these advertised products

are not one-offs. NYU did not advertise that one can apply to only one Challenge, or that startup advising is limited to 5 sessions, for example.

Finally, the Court states that further amendment of any claim would be futile for reasons that are easy to rectify. For example, all Plaintiff has to do for the religious discrimination allegation is cite several individuals with different characteristics who were allowed to submit similar prayers, which he has at hand.

## ARGUMENT

### I.    Judge Liman Again Failed to Recuse Himself

Judge Liman did not recuse himself in *Litovich v. Bank of America Corporation* (1:20-cv-03154), which he also dismissed with prejudice in favor of billionaire institutions when his family had conflicts of interest. Judge Liman knew his wife held shares in Bank of America, reporting them in his "accurate, true and complete" certified 2020 Disclosure Statement. This Court reversed that decision deciding that Judge Liman's partiality could reasonably be questioned and that there was legitimate risk to undermining public confidence in the judicial process. In the present case, the conflicts arise from the Limans' relationships with NYU.

Arthur Liman, Judge Liman's father, was widely considered the best litigator of his generation, a champion of public interest law and a leader in his religious community, who engendered strong friendships and loyalties. As any good parent would, Liman senior helped his children succeed with extensive

networking with his friends in high places. The Liman children would go boating

with then Congressman Chuck Schumer, whose Judicial Screening Committee as

Senator would recommend Judge Liman to the District Court. When Liman senior

led the Senate Iran-Contra investigation, he brought on Judge Liman as a

volunteer. When Liman senior represented Warner Bros which employed Steven

Spielberg, son Dough, now a successful Movie Director, states, "through" my

father "I met Steven Spielberg and got rides on his private plane to California."

Similarly, Liman senior represented Laurence (Larry) Tisch (NYU '42) who

was NYU's Chairman for 20 years and sat on the Board of Trustees for 35 years.

Mr. Tisch was not just a personal client, but a close friend, tennis partner and

Westchester neighbor according to a CNN article.[3] Liman senior states in memoire,

"Larry, his wife Billie and I were close friends. Larry and I often ate Lunch on

Saturdays." The Liman-Tisch relationship extended into the greater family. The

Limans attended Jonathan Tisch's (Laurence's nephew) wedding in 1988, for

example. The Tischs are some of NYU's biggest benefactors with several schools

named after them such as, the Tisch School of the Arts and the Jonathan Tisch

Center for Hospitality, and were honored a few years ago at the NYU Tisch Gala.

The Limans are also close with Martin Lipton (NYU '55), a current, long-

serving member of NYU's Board of Trustees, who was NYU Chairman for 16

---

[3] https://money.cnn.com/magazines/fortune/fortune_archive/1987/06/08/69115/index.htm

years between Mr. Tisch and Mr. Berkley, and who also represented Laurence Tisch's company. Liman senior also calls Mr. Lipton a friend multiple times in his memoire such as when sharing testimony from *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1 (1987), "I think that Marty Lipton was my friend, still is my friend." The Liman-Lipton relationship also extended into the greater family through Judge Liman's uncle, James Fogelson, an esteemed corporate lawyer in his own right.

The Limans and the Rennerts, who are major donors to NYU and play active management roles, have also been friends for decades. Ira Rennet (NYU '57) was on Stern's Board of Overseers and Ari Rennert (NYU '01) is on Stern's Executive Committee alongside Chairman Berkley. As stated, the Rennerts sponsor the Challenge, from which this dispute arises, with a $3M permanent endowment, and two NYU Entrepreneurship professorships. The Limans' close relationships with current and past NYU administrators and donors are substantial:

1. Laurence Tisch, his wife and son were Presidents over 4 decades of the UJA Federation of New York, where Liman senior and Mr. Fogelson were awarded the same prestigious award and the latter has an award in his honor. Mr. Lipton and Mr. Fogelson are also both former Chairmen of the UJA Federation's Lawyers Division and Judge Liman was a member of the Lawyers Division as far back as 2006.

2. Mr. Lipton recruited Mr. Fogelson out of NYU Law and promoted him to partner in only 3 years, a third of the average time. Mr. Lipton, in his essay "My 72 years at NYU," names Mr. Fogelson as the person to whom he handed over his NYU Law course.

3. Ingeborg Rennert is a life Trustee at NYU law school. According to an NYU Law brochure, Ira and Ingeborg Rennert made a "major gift" to the

construction of a building, and the two have endowed the Inge and Ira Rennert International Law Suite, the Inge Rennert Distinguished Visiting Professor of International Law and the Weinfeld Program whose past Fellows include both daughters Tamara and Yonina Rennert, and Judge Liman's cousin, Robert Fogelson.

4. Judge Liman was employed at NYU Law under Mr. Lipton, Mr. Tisch and Mrs. Rennert. At Columbia, where Judge Liman is currently employed, and his sister Emily Liman was previously employed, Ari Rennert is a member of the Board of Overseers since at least 2015, and the Rennerts have funded an Ira Rennert professorship, the Ira Rennert Speaker Series, a Columbia Business Fund and an Executive MBA Fund.

5. Judge Liman's wife, Lisa, described in a brochure as an "independent fundraising consultant," was Barnard's Director of Alumni Affairs for many years, tasked with raising funds and building relationships with donors. The Rennerts were major donors to Barnard during this time, funding a $2.5M professorship, The Ingeborg, Tamara, and Yonina Rennert Senior Thesis Prize, a research fund, Rennert Hall and Rennert Lobby and the Rennert Advisory Board. Nina Rennert, Ira Rennert's daughter and Merryl Tisch were/are both on Barnard's Board of Trustees for many years. The former co-chaired and "underwrote" (top distinction) the Barnard Annual Gala fundraiser, which Mrs. Liman is associated with in the 2024 edition. Barnard's President's Office refused to share a list of the Trustees with Plaintiff, calling it confidential, despite public information online about past Trustees and Barnard press releases about new Trustees.

6. Ingeborg Rennert is Vice Chair at The Museum of Jewish Heritage where Mrs. Liman was employed as an Interim Development Director.

7. Ira and Ingeborg Rennert are both Overseers on the American Friends of Bar-Ilan University (AFBU) Board, where Mrs. Rennert is also Vice-President. She also has a university center in her name since 1995 that hands out prestigious awards. Mrs. Rennert and Arthur Liman are named side by side as honorary doctorate recipients in 1994. The Rennert managed AFBU purchased a New York Times notice in 1997 extending their "sincerest condolences to the family of one of the University's most distinguished honorary alumni Arthur Liman."

8. The founding and active Director of the Arthur Liman Center for Public Interest Law at Yale and Arthur Liman Professor of Law, Judith Resnik was hired from NYU to run the center when it was established in 1997, and NYU awarded her alumna of the month in 2012. Requests to Director Resnik and Executive Director Katherine Braner for information about the friends and donors who founded the center received no reply.

9. An NYU representative, Melissa Murray, sits alongside Dough Liman on the Advisory Council of the Yale Arthur Liman Center. (App p.28)

The Arthur Liman Center for Public Interest Law at Yale program was created following the unfortunate early passing due to cancer of Arthur Liman at the age of 64 (James Fogelson also succumbed to cancer at age 48 age)[4]. The Limans' donor friends thoughtfully funded several Liman programs, including the Yale Liman Center, with fellowships also offered at 9 other universities (including Barnard), the Liman Professorship, the Liman Colloquium and the Liman Workshop. These programs have graduated hundreds of Liman Fellows, including 9th Circuit Court of Appeals Judge Holly Thomas. The center and its programs have undoubtedly had an incalculable positive impact on society. For Judge Liman however, the source of funding, along with the aforementioned nepotism, taking aside that the

---

[4] Plaintiff writes these remarks while fully empathizing with the Liman's losses, as his father, who also worked tirelessly on behalf of the marginalized by expanding education in rural areas as a Director in the Algerian Ministry of Vocational Schools, prioritizing his job over finishing chemotherapy, died of cancer at age 39. For Plaintiff's mother to not lose her NYU scholarship, which would later allow Plaintiff to become American and attend NYU, she had to return to the US pregnant, leaving behind Plaintiff age 7, and his brother age 8, with neighbors in Algeria for 8 months, during which time Plaintiff's father died in a distant dilapidated hospital without his wife, sons and never meeting his future daughter.

Limans are brilliant in their respective fields, create serious conflicts of interest, as

Judge Liman himself admits in a written statement for the Yale Liman Center:

> I would like to thank and salute four groups of people, **First, the donors** who created the program in the first instance when my father was sick with cancer. A remarkable group of individuals joined together to create the Liman chair and the fellowship program and **my family are deeply indebted to them**. (App. p.29)

These conflicts of interest are likely only a fraction, yet enough to

reasonably call into question Judge Liman's partiality in a case that implicates the

interests of past and active NYU administrators/donors that his family has been

close to, and benefitted from, for decades, especially in deeply sentimental

contexts that would make impartiality impossible even with one's best effort,

violating 28 U.S.C. §455.

Analyzing the Court's arguments to dismiss the SAC is proof that the

conflicts of interest have led to bias. Numerous examples are cited in this appeal,

but one that relates to Judge Liman's friends specifically is his defense of phantom

allegations about the Rennerts. Judge Liman states in the SAC, the "repeated"

allegation "that Defendant receives funds from the Rennert Family Foundation did

not give rise to an inference of discrimination once more fail[s] to support

Plaintiff's Title VI, Title IX and Section 1981 claims." (Dkt. 83, p.11) **Nowhere**

does the SAC mention the Rennerts, or make such inference. The Freudian slip

shows that Judge Liman is more interested in defending the Rennerts and NYU,

rather than properly reading and adjudicating the claims.[5] In contrast, Judge Liman engages in extensive "gaslighting" in the SAC about critical allegations, such as stating that Plaintiff failed to make allegations that were indeed made with the Judge's exactly desired and synonymous language, to justify his dismissals.

Judge Liman's desire to dismiss Plaintiff's case without fair and proper consideration can also be gleaned from his refusal to allow Plaintiff to submit substantiated sanction motions and being unresponsive to a motion for oral arguments to oppose NYU's motion to dismiss the SAC (Dkt. 78-79). The proposed sanctions motion concerned, Kissinger Sibanda, a rogue lawyer with whom Plaintiff had one consultation. Mr. Sibanda attempted to sabotage Plaintiff's case by adding himself as an "Interested Party," submitting several letters to Judge Liman, writing to NYU's lawyers in no less than 17 emails and filing motions on the docket with total disregard for attorney-client privilege (Dkt. 22). NYU only asked Mr. Sibanda to stop once these acts were brought to the Court's attention, who issued an order demanding that Mr. Sibanda stop filing on the ECF docket and

---

5 In the FAC, Plaintiff did posit that his ban from the Challenge may have been influenced by Ira Rennert's public funding of anti-immigrant and anti-Muslim groups. The complaint appendix included a picture of Ira Rennert with Frank Gaffney and proof of a $50,000 donation to his think tank. Mr. Gaffney has been banned from such groups as the Conservative Political Action Conference (CPAC) for his bigoted views and conspiracy theories such as, that President Obama is a secret Muslim, and his think tank has been designated a hate group by the Southern Poverty Law Center. Judge Liman takes umbridge to Plaintiff's hypothesis (Dkt 48, p.24) and refutes it in detail, while failing to discuss more factual allegations that support a cause of action, such as plaintiff alone is permanently banned from applying to the Challenge for no reason at all.

to be removed as an "Interested Party." Mr. Sibanda kept threatening Plaintiff, writing him, "when Judge Liman receives another motion from me, it will be the nail in the coffin for your case," and violated the Court's order with another submission. Plaintiff reported Mr. Sibanda to The DC Bar Office of Disciplinary Counsel, who after a two-day trial recommended he be suspended 30 days with remedial legal training. Initially, Judge Liman indicated that Plaintiff may submit a sanction motion after he reviewed the complaint, so that he would be familiar with the case, but consequently refused to allow any sanctions motion against Mr. Sibanda, despite clear violations of Rule 11 of Fed. Civ. Procedure, which forbids the submission of any paper or motion for improper purposes, such as to harass.

## II.    The District Court Did Not Apply the Necessary Legal Standards

The Court recites some of the necessary legal standards (Dkt. 83. p.9) but utterly fails to apply them. The discrimination claims for example, which are treated similar to Title VII, require only the following, "What must be plausibly supported by facts alleged in the complaint is that the Plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *DeVore v. Neighborhood Hous. Servs. of Jamaica Inc., No*. 15 Civ. 6218 (PKC), 2017 WL 1034787, at *4 (E.D.N.Y. Mar. 16, 2017) ("At the pleading stage, a Plaintiff does not need to prove discrimination, or even allege

facts establishing every element of the McDonnell Douglas *prima facie* case, but the facts alleged must give plausible support to the reduced requirements of the *prima facie* case.") (citing *Littlejohn,* 795 F.3d at 311). Courts making the plausibility determination should do so "mindful of the elusive nature of intentional discrimination" and the frequency by which Plaintiffs must "rely on bits and pieces of information to support an inference of discrimination, i.e., a mosaic of intentional discrimination." *Vega*, 801 F.3d at 86. Citing, *Feliz v. M.T.A.*, 2017 WL 5593517, (S.D.N.Y. Nov. 17, 2017). The Court did not view the allegations as a mosaic, systematically applied narrow definitions, ignored allegations, made inferences in favor of NYU and applied other methods to sabotage every valid claim. The Court's decisions through these unreasonable legal standards have undermined not just Plaintiff, but the public's ability to seek legal recourse from civil rights and other abuses, especially pro se litigants.

## III.    The District Court Wrongly Dismissed the Discrimination Claims

As stated above, using a hodgepodge of tactics, the Court finds fault with almost every properly pled discriminatory allegation to undermine Plaintiff's *prima facie* case and dismiss every claim. For example, Plaintiff newly alleges in the SAC a minimum 15 individuals (SAC ¶ 123) and 11 ventures (Id. ¶ 126, 242) as examples of disparate treatment for discrimination in the Challenge, yet inexplicably the Court picks up on only one carry-over example from the previous

complaint, stating, "Plaintiff's allegations that one out of twenty-two Challenge award recipients was a White woman[6]…did not give rise to an inference of discrimination…Those repeated allegations once more fail to support Plaintiff's Title VI, Title IX and Section 1981 for the same reasons." (Dkt. 83, p.11) Some of the ignored ventures include four near-perfectly situated winning social network ventures, "The Challenge, in editions before and after Plaintiff's submission, not only chose similar and poorer social network ideas, as initial winners, but selected many of them as final prize money winners" (SAC ¶ 123). The Court does not even address all alleged discrimination acts, such as Plaintiff can't be a one-person team in NYU's programs or his continued ban from start-up advising, and others.

Even when the Court acknowledges disparate treatment examples, it applies extremely narrow definitions. For discrimination in the NYU Holiday Gift Guide, the Court states, "Plaintiff pleads only that The Activate Store 'is a fashion label that sells apparel and accessories online to the fashion and socially conscious consumer" and that '[t]he website states that the store distributes 99% of profits.' Plaintiff does not allege that the three accepted apparel ventures operated similarly or even sold similar types of apparel—a tremendously broad category that

---

6 The FAC alleged that the White woman was chosen a Challenge winner despite not meeting the "World Positive" selection criteria and not being a legal venture as required by the eligibility rules. She was selling a medical device to the public claiming miraculous results based on her friends' anecdotes and with no FDA approval as required by law. The FDA wrote to Plaintiff that her product was problematic, yet Mr. Berkley and others ignored this information and continued to promote her venture and market her illegal and untested product on NYU's website.

encompasses a plethora of wearable items" (Dkt. 83, p.14). The SAC states, "promoted ventures… included numerous ventures similar to Plaintiff's store…Swoveralls: selling fashionable and functional apparel…Junto: selling apparel to the same target market, the style conscious and ethically conscientious customer…and Moss Studio: another fashion brand/online store" (SAC ¶ 196). Plaintiff clearly alleges the stores operated similarly, online, and sold apparel to the same target market, yet the Court seeks a comparison at the apparel level. This standard is wrong and may open the door for civil right abuses if not corrected.

The Court further states, "Plaintiff does not allege what the criteria for inclusion in the Gift Guide were, whether The Activate Store or the chosen ventures met those criteria, or any other circumstances regarding his comparable merit" (Dkt. 83, p.14). Plaintiff indeed alleges these, writing, "The NYU Gift Guide is not a contest… If you are an NYU founder whose venture offers products to be purchased, we would love for you to participate in this year's edition so we can support you and your business" (SAC ¶ 183). The criteria is also alleged - being an NYU Founder whose venture offers products to be purchased. "Comparable merit" is moot because the Gift Guide is, "not a contest...is digital and does not have number restrictions," (Id. ¶184). Nevertheless, merit is still alleged as, Columbia University's Holiday Gift Guide, which unlike NYU does not have race or gender identifying questions, listed Plaintiff's store and called it a "great fit" and its products "fantastic" (Id. ¶ 203).

The Court cites numerous cases to dismiss Plaintiff's disparate treatment allegations, that with a full reading, actually undermine its arguments. For example, *Karunakaran v. Borough of Manhattan Cmty. Coll*., 2021 WL 535490, at *5 (S.D.N.Y. Feb. 12, 2021) states, "What satisfies this requirement will vary from case to case, and while the Plaintiff's and the comparator's circumstances need not be identical, they "must bear a reasonably close resemblance." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014). The Court similarly cites, *Johnson v. N.Y.U.*, 800 F. App'x 18, 21 (2d Cir. 2020), "We agree with the district court that the white comparators Johnson cited did not meet this standard since none of the comparators had sought (let alone been granted) readmission after being expelled. It is true that comparators need not be identical, but there must be at least a "reasonably close resemblance of the facts and circumstances." Both cited cases support Plaintiff's claims. Furthermore, as stated, the comparison should be at the individual, not the venture level, as the discrimination primarily concerns not being allowed to even participate in programs. Discrimination in the contests' selection is also alleged but to focus only at the venture level is a red herring.

The Court also selectively cites in support, *Feliz v. M.T.A.*, 2017 WL 5593517, at *6 (S.D.N.Y. Nov. 17, 2017), when a full reading undermines the dismissal, "It is important to note that courts must review a Plaintiff's evidence at this step "as a whole" rather than in a piecemeal fashion. *Byrnie v. Town of*

*Cromwell, Bd. of Educ.,* 243 F.3d 93, 102 (2d Cir. 2001). "No one piece of evidence need be sufficient, standing alone, to permit a rational finder of fact to infer that a defendant's employment decision was more likely than not motivated in part by discrimination." *Walsh v. New York City Hous. Auth.,* 828 F.3d 70, 76 (2d Cir. 2016). Plaintiff's factual allegations viewed collectively are irrefutable.

In regards to the Title 9 claim, Plaintiff supports empowering NYU female entrepreneurs, which the school should be doing by increasing the size of the funding pie from its $6 billion endowment, and not through pervasive gender discrimination with unmeritocratic allocations of the current pie. As NYU refuses to address the illegality of its actions, this Court must intervene where the District Court failed. The Court dismissed years of incriminating statistics, such as 25 of 32 ventures promoted in the 2023 Gift Guide, or 80% were labeled as "Women owned" and all were one-person teams (SAC ¶ 195), and, "100% of first-place teams in NYU's major startup competitions led by a female CEO" (Id. ¶ 211).[7] Other ignored allegations include outright NYU admissions of the gender bias. For example, "Startups Supported in Accelerators and Fellowships," by "Gender Identity" shows 16 more "Woman Founder" and 2 less "Man founder" startups over the previous year," which as explained by NYU, "more women-led teams

---

[7] The Court also infers in favor of NYU that teams are mixed-gender when the allegations show they are mostly one gender by a single founder. (Dkt. 83, p.21 Footnote)

were accepted into our accelerators than men-led teams – a radical and important inversion of industry trends, thanks in part to our award-winning Female Founders Fellowship" (Id. ¶ 213). NYU admits that their discrimination is radical and due to a Female Founder program that has rejected all male applicants, does not allow teams and gives females preferential treatment in a wide array of NYU programs, such as the Challenge and Hackathon, which is also alleged, "The 2021-2022 Hackathon (80% female winners) and 2021-2024 Challenges chose females ahead of Plaintiff due to their gender and being members of the Female Fellows program" (SAC, ¶ 227). The program application also has gender identifying information while purporting not to use gender in its selection process: These Female Founder/Challenge/Hackathon examples are all overlooked by the Court:

    a. Aleksandra Medina, Founder of Frich (2023 Challenge winner)
    b. Ann Andrews, Founder & CEO of Techfunic (2021 Challenge Winner)
    c. Ayman Mukerji, Founder & CEO of Jivika (2021 Hackathon winner and 2023 Challenge winner)
    d. Alexandra Debow of venture Somewhere Somehow (2022 Challenge Winner)

The Court also incorrectly dismissed the §1981 claim stating that, "None of Plaintiff's new allegations of discrimination concern an activity enumerated in Section 1981" (Dkt. 83, P.12), when the statue encompasses all forms of contracts, as in the lending discrimination case, *Anderson v. Wachovia Mortgage Corp.,* 621 F.3d 261, 275 (3d Cir. 2010). Similarly, Plaintiff has alleged discrimination in, "the making, performance and the enjoyment of all benefits, privileges, terms, and

conditions of the contractual relationship" with NYU arising from his alumni benefits and paid contests. Furthermore, the U.S. Supreme Court in *CBOCS West, Inc. v. Humphries* 553 U.S. 442, interpreted §1981 to also prohibit retaliation for reporting a violation of a contractual related right under the statute, and NYU has retaliated against for Plaintiff reporting its contractual violations.

The Court also wrongly concludes that Plaintiff's NYCHRL accommodations claim fails because he does not adequately allege any act of discrimination," which is demonstrably false. In regards to the gender discrimination, the Court states for example that, "Plaintiff does not allege that any study was "statistically significant" and "Plaintiff has not plausibly alleged that any disparity exists" (Dkt. 83, p. 20). Plaintiff's allegations do show gender disparity; the Female Fellows program has only ever selected females, 100% of all NYU winning ventures recently were led by a female CEO, the 2021 Hackathon was 80% female, the Gift Guide 80% female (in a previous year 100% female), and many others, despite females often being a minority of the applicants as alleged (SAC 70, ¶ 209).

Plaintiff also factually alleges through PitchBook data reported in Forbes that NYU's females receiving VC funding are an "extreme outlier" as a percentage of the total compared to their female peers at the 10 next best schools, which is a "statistically significant" study (Id. ¶ 207). Furthermore, it is alleged that the average percentage female funding by outside VCs versus that of the NYU's

venture fund has a 40% discrepancy. Either VCs operating in a competitive industry are forgoing substantial potential profits due to sexism, or NYU is discriminating by over selecting and over funding female ventures at the expense of male ventures. Inferring the latter, as legal standards dictate, is supported by the allegation that the 2023 Challenge selected winning female ventures that rent used hair extensions in a health pandemic and used party dresses when they fail to meet the selection criteria, while dismissing Plaintiff's venture out of hand (Id. ¶ 245).

## IV.    The District Court Wrongly Decided Alumni Benefits are "Gratuitous"

This Court has established that there exists an implied contract between students and universities and the terms are, "contained in the university's bulletins, circulars and regulations." *Papelino v. Albany College of Pharmacy of Union University,* 633 F.3d 81, 93 (2d Cir. 2011) (quoting *Vought*, 127 A.D.2d at 654); "Such terms are binding on the parties, independent of whether the university so intended, and regardless of whether the student knew of them or understood them to be a part of the contract." Moreover, "To survive dismissal on such a claim, the student need not cite any written materials at all." *Bosch v. NorthShore Univ. Health Sys.*, 2019 IL App (1st) 190070.

The Court based its FAC dismissal due to: 1) a timing discrepancy between the alleged alumni benefits and Plaintiff's payments to NYU, "It is axiomatic that past consideration cannot support the formation of a new contract" (Dkt. 63, p.16);

2) the alleged benefits being too vague; and 3) inferring in favor of NYU that the exclusions are temporary. The SAC addressed all three points with pages of well-defined alumni benefits from brochures that match the payment dates and factually alleging that the bans have not been lifted. The Court does not recognize any of the improved pleadings and inexplicably states, "the claim therefore fails for the same three reasons articulated in the Court's previous Opinion and Order, Dkt. No. 63 at 16–18." The Court moves the goal posts, replacing the cured timing reason with a new reason, that Plaintiff now fails to even allege he provided any form of consideration, when it is certainly alleged, "Plaintiff paid NYU hundreds of thousands of dollars" (SAC ¶17) and "Payments to NYU all match the dates of the brochures and alumni benefits and promises upon which Plaintiff relied" (Id. ¶ 77). The result is a parroting of NYU's defense that alumni benefits are gratuitous.

The Court supports its argument that Plaintiff's alumni benefits are a "gratuitous promise" by citing selectively from a case that in fact contradicts the dismissal, "In a case for breach of contract, when it is clear from the face of the pleading and the terms of the contract that a promise is gratuitous, the complaint will be dismissed." *Startech, Inc. v. VSA Arts.,* 126 F. Supp. 2d at 236." In the present case, is not clear that the promise is gratuitous, as it is common knowledge that one has to pay to become an alumnus, payment is clearly alleged and Judge McMahon does not in fact dismiss the claim, stating, "I cannot say at this

25

extremely early moment in the life of this lawsuit that Startech's "continued cooperation" and "assistance" with VSA's fund raising efforts fails to qualify as consideration. Therefore, the breach of contract claim will not be dismissed."

The other two arguments cited for dismissing this claim are equally wrong. The SAC alleges specific and well-defined descriptions of the denied alumni programs such as, the Challenge (Id. ¶ 80-96), startup-advising (Id. ¶ 158-166), Endless Frontier Labs (Id. ¶ 174) and the Gift Guide (Id. ¶ 183). The Challenge has a dedicated multi-page website, eligibility agreement, instructions, application and other materials, yet the Court still concludes this benefit to be so general as to be unenforceable. The Court also states that, "Plaintiff fails to allege violation of any specific promise," when he clearly alleges NYU "failing to comply with providing the numerous specific and well-defined alumni benefits highlighted in this Complaint" (Id. ¶ 328). These detailed benefits in the SAC even have bolded headers such as, the "Challenge Alumni Benefit" and "Startup Advising Alumni Benefit." None of these pleadings were construed in a light favorable to the Plaintiff, and with these impossible standards the Court has created a precedent that undermines all students' rights just to appease NYU in this once instance.

### V.    The District Court Wrongly Decided Challenge Terms Not Enforceable

The Court correctly states that, "Plaintiff has sufficiently alleged that his participation in the 2021–22 and 2023–24 Challenges created a contractual

relationship with Defendant." (Dkt. 83, p.34), but is incorrect in stating, "Plaintiff does not point to specific provisions of the offer he accepted or the rules of the contest that Defendant violated" (Id. p.35). The SAC clearly alleges, "NYU breached their agreements with Plaintiff, and failed to comply…with the following stated or implied provisions: [Listing 8, including 25-35 promised winners.[8]]" (SAC ¶ 334-335) The Court further incorrectly concludes that these statements, "cannot have constituted the offer which Plaintiff accepted, because they did not appear alongside a mention that any requirement that an entry fee be paid or that an application be submitted" (Dkt. 83, p.36). This is a both wrong and an inference in favor of NYU. First, they do not need to appear "alongside," and secondly, they indeed do appear alongside the statement "November application deadline," which is on the same page and on the same list, 8 bullets points below the number of promised winners and 2 below the prize money. Even the Court's argument dismissing the FAC discredits its new argument, stating, "For one, the website does not mention any requirement that an entry fee be paid or that an application be submitted" (Dkt. 63, p.21). Here the Court defines "alongside" as meaning on the same website. The SAC clearly alleges, "NYU disclosed the rules for The Challenge on its website…which included but is not limited to…payment of the

---

[8] NYU's attorneys even admitted in a Memorandum that the number of Challenge winners advertised was a promise, "…had NYU chosen the promised number of entries.." (Dkt 48, p.17)

$100 fee…and selecting a minimum of 25-35 winners" (SAC ¶ 90). The Court once more moves the goal posts to sabotage Plaintiff's claims, but by its own logic and definition, this claim is properly pled.

Furthermore, Plaintiff alleged that Federal guidelines require that the disclosure of contest rules and policies, no matter how it is made, must not be false, and once posted must be followed exactly (Id. ¶ 99). The Court stating that there are valid contest contracts between Plaintiff and NYU, but inferring to the benefit of NYU that key terms are "loose language" is wrong and dangerous, as it opens the door for a tidal wave of consumer fraud in paid contests if not corrected.

## VI.    The District Court Wrongly Dismissed the GBL Claims

GBL §349 and §350 claims are not subject to the pleading-with-particularity requirements of Rule 9(b) and need only meet the bare-bones notice-pleading requirements of Rule 8(a). The SAC alleges NYU's statements have a broader impact on consumers at large, were misleading in a material way and injured Plaintiff by him purchasing NYU's products and not receiving the full value. The standard to determine whether NYU's advertisements were misleading is not to the average person, but to the ignorant and the credulous who, in making purchases, do not stop to analyze and are governed by appearances and general impressions.

NYU advertised specific non-discriminatory policies and systematically failed to adhere to them or hold its reported administrators accountable as promised.

NYU also advertised a lifetime of alumni benefits, which is misleading as the school has permanently banned Plaintiff for no reason. NYU also misrepresents numerous well-defined alumni programs and services. For the Challenge, NYU knew beforehand that it would not use third-party Judges, apply the stated "World Positive" selection criteria, or choose 25 minimum winners and other false statements such as, evaluating all eligible and complete applications.

In dismissing the GBL claims the Court cherry picks from Plaintiff's allegations, focusing on the vague benefit statements, while overlooking the well-defined programs. The Court's belief that NYU's alumni promises to Plaintiff were "true statements" using a buttered potatoes example, is also wrong and not a good analogy. A more appropriate one to alumni benefits would be a carbonated beverage advertised as never going flat. If there are no more bubbles after a certain period of time, the statements are false and deceptive. As NYU encourages alumni participation at every age and hounds all alumni for donations, the stated "lifetime" relationship is not puffery. In regards to the Challenge benefit and others, the products were "flat" from the outset through non-performance of material terms.

## VII.   The District Court Wrongly Dismissed the Complaint with Prejudice

As demonstrated, the Court wrongly found that Plaintiff made bald assertions, has no viable claim and that further revision would be futile. Also, only one previous opportunity to amend following a decision has been afforded.

## CONCLUSION

Mr. Lipton also writes in his, "My 72 years at NYU," essay that, "NYU is an institution that I am proud to be a Trustee of, as are all of my fellow Trustees. I am immensely proud of the role I have played in making NYU the institution it is today." One of the success stories he cites is the Berkley Center, where Chairman Berkley is an annual Judge in the Challenge and may be deposed in Discovery. Given Judge Liman's deep indebtedness to his close and active NYU administrator and donor friends such as the Rennerts and Mr. Lipton, his dismissals to not upset them are understandable but wrong. The judiciary however, as arguably the only branch of government free of special interest influence, must remain a stalwart defender of the Constitution and the rule of law, and not bend to plutocrats, even if protecting the rights of someone of Plaintiff's characteristics may not be in vogue. As aptly stated in Arthur Liman's memoire, "the law protects the poor as well as the rich, the unpopular and feared as well as the celebrated and successful."

For the foregoing reasons, I respectfully ask that this Court reverse the judgment of the District Court with a finding of fact in favor of the Plaintiff. In the alternative this Court should remand the case for a fair and partial proceedings.

Respectfully submitted,                          By:    /s/*Karim Annabi*
                                                          Karim Annabi

Dated: November 13, 2024